This action was commenced in April, 1791.
On the part of the defendants, it was proven by an old deed, dated 10 January, 1714, and by the records of the court of orphans of the same year, that one Brice, guardian of the grantee, Castage, had (249) by permission of the court of orphans, sold 160 acres of this land, beginning at the lower corner tree on the river, running up the river, and then into the woods for complement. A deed of 1744, and another of 1764, were produced in the latter of which Mr. Cornell was a party. These proved that the second line of this tract, and the third corner, were deemed at those periods to be the line and corner of Vassimore, the bargainee, who purchased of the guardian; whereby the location of the 160 acres was confined to the lower part of the tract. On the part of the defendant it was further proven that on 23 July, 1774, Mr. Cornell obtained a grant for a large part of this tract of land adjoining the river and creek, and that in April, 1775, he took possession, which hath been continued ever since, first by Edwards, his son-in-law, and by his widow and her children since.
Davie, for defendant, argued that as there was no evidence of possession in the Finyaws for a great length of time preceding the entry of *Page 198 
cornell, that therefore Cornell's entry had taken away Finyaw's right of possession, for when a grantee has not had possession for seven years before, and another claimant enters, as Cornell did in this case, the act of limitations will toll the entry of such person. Seven years passing without an entry on the part of the first grantee, and another person then found in possession, tolls the grantee's right to turn the other out of possession; his right of possession is lost. There is no necessity under the act that the possession of the enterer should be continued seven years.
Whatever construction may have prevailed in England upon their statute of limitations, it is clear, with respect to our act, when a man hath obtained a grant of land, he thereby gains a constructive possession, which continues until an actual adverse possession commences, and that adverse possession must be continued seven years before the jusintrandi or right of possession of the first grantee is lost. A single act of entry cannot take away the grantee's right of possession, because such entry may be made without any notoriety, whereas seven years actual possession affords notoriety and, as it were, calls upon the owner to assert his right. In the present case, unless there hath been such actual possession for seven years as is allowed of in law (250) computations, the plaintiff's right is not tolled. As to the time elapsed between 6 March, 1773, and 1 June, 1784, that was not allowed of by the express direction of two acts of the General Assembly; and the possession that can be counted in the present case is only from 1 June, 1784, to the time of the commencement of the action, which was short of seven years by two or three months. An objection hath been made to the propriety of disallowing the time between 1 March, 1773, and 15 November, 1777, the act of 1777 only saying it should be disallowed when pleaded to actions brought; whereas the act of limitations is never pleaded in this action of ejectment. The answer to that is, ubi eadem est ratio, ibi eademest lex, the reason of that provision was, because during the time that intervened between these two periods there were no courts in this country. Does not this reason apply with equal force to an ejectment case as to any other? A man out of possession when the law provides him with no means to gain possession should not have the not getting of possession during that time imputed to him as an abandonment of his property any more in the case of a real estate than in that of a personal estate. What is still a more full answer to the objection is this, that if the act of 1777 had not been made, the act of limitations would not have run during the time there were no courts in the country to which the plaintiff could apply for the recovery of his right. *Page 199 
No laches in such case could be imputed to him, nor could any presumption be founded upon his delay, as there is in all cases where the act applies.
The Court here cited Co. Litt. in his chapter of entries, where it is laid down that a descent cast in time of war will not toll the entry of him who hath the right of entry, because, saith the book, where the courts are not open for the administration of justice, whether occasioned by rebellion, insurrection, or foreign invasion, it is said to be time of war, and laches are not then imputable to the party. So here, though the act had not been made, the intervening time was such as could not subject the plaintiff to the imputation of laches. He could not in that time assert his right. The courts of justice were shut up as to the possession of Edwards. In general, it is very much to be doubted whether such a possession, had it continued for seven years, could have tolled the entry of the owner; he had no deed nor any color of title; but it is unnecessary to give any opinion upon this point now.
The defendant's counsel then proceeded to state other objections to the plaintiff's recovery. He argued that the words used in the deed from Jane Finyaw to her son were give and grant; and the (251) consideration, natural love and affection. It therefore could not be a bargain and sale, for want of a valuable consideration, and there were no words made use of to show the intent of the parties that it should operate as a covenant to stand seized; therefore, it must have been intended as a common-law conveyance, and then it was void for want of livery and seizin. He cited 2 Bl. Com., 310, 316, 311, 227. This was answered on the part of the plaintiff, by citing 5 Bac. Ab., 362; 2 Wils. 22, 78.